UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| STEVEN J. HAYES, | : |
|     Plaintiff, | : |
|  | : CASE NO. 3:16-cv-377 (AWT) |
| v. | : |
|  | : |
| DR. CARSON WRIGHT, et al., | : |
|     Defendants. | : |

INITIAL REVIEW ORDER

The plaintiff, Steven J. Hayes, who is currently incarcerated at Northern Correctional Institution in Somers, Connecticut, has filed a complaint pro se under section 1983 of title 42 of the United States Code. The complaint was received by the court on March 7, 2016, and the plaintiff's motion to proceed in forma pauperis was granted on March 10, 2016. The plaintiff names five defendants: Dr. Carson Wright, Dr. Johnny Wu, John Doe, Jane Doe and Richard Fury. The plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs by failing to provide a diet that accommodates his soy intolerance or allergy. The plaintiff also asserts a state law claim for violation of the Department of Correction contract with the University of Connecticut Health Center to provide medical treatment. He seeks damages as well as injunctive

relief and has requested a court trial.  After careful review, the court concludes that the complaint should be served on the named defendants.

Under section 1915A of title 28 of the United States Code, the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief.  Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  Conclusory allegations are not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  "'A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less

2

stringent standards than formal pleadings drafted by lawyers.'" Boykin v. KeyCorp., 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

I.  Allegations

There are two main types of food allergies, IgE-mediated or anaphylaxis response, which is life-threatening, and non-IgE-mediated or hypersensitivity response, which is not life-threatening.  A skin-prick or RAST test cannot detect non-IgE mediated allergies.  Symptoms of non-IgE-mediated allergies include cramps, vomiting, diarrhea and headaches.  Non-IgE-mediated allergy responses develop over time.

The plaintiff has a non-IgE-mediated allergy to soy.  This allergy is commonly referred to as soy allergy, soy intolerance, milk-soy protein intolerance, allergic colitis and hypersensitivity.  As a child, the plaintiff was diagnosed with allergic colitis to soy-based formula.  He avoided all forms of soy until he was twenty years old.

In 1982, the plaintiff experienced non-IgE-mediated allergy symptoms after eating tofu.  He learned that numerous labels identified soy products, including soy, msg, texturized vegetable protein or TVP, texturized soy protein or TSP,

3

hydroglized vegetable protein or HVP, soy protein isolate or SPI, and soy protein concentrate or SPC.

The Department of Correction uses TVP in all quick-chill prepared foods, which include most items on the common fare menu.  TVP is increasingly being used in foods on the regular fare menu.  Inmates are not notified that TVP is present in foods on either menu.

In the mid-1990's the plaintiff began experiencing non-IgE-mediated allergy symptoms.  He assumed the symptoms were attributed to food poisoning.  In 2007, the plaintiff was confined at Northern Correctional Institution.  He told Dr. Wright about his soy allergy.  Dr. Wright told the plaintiff that the Department of Correction did not use soy in meals and did not document his allergy.  Rather, he listed allergies that the plaintiff did not have and misdiagnosed the plaintiff as suffering from HIV.  Dr. Wright diagnosed a seizure disorder when the plaintiff was actually suffering from low blood sugar episodes as a result of skipping meals.

Within months of his arrival at Northern Correctional Institution, the plaintiff began experiencing severe cramps, constant diarrhea, headaches and vomiting from eating the quick-chill meals.  He was not aware that these meals contained TVP,

msg, soy flour and margarine.  The plaintiff avoided meals containing sauce or gravy because Dr. Wright refused to order a medical diet or investigate the plaintiff's symptoms.  Because he failed to eat quick-chill meals, the plaintiff's weight dropped from 210 libs to 120 lbs.  He experienced low blood sugar episodes which caused him to "black-out."  Dr. Wright diagnosed a seizure disorder.

When the plaintiff was transferred to Garner Correctional Institution in November 2008, his medical diagnosis was corrected.  Dr. Ducate diagnosed msg allergy/intolerance.  In 2010 at MacDougall Correctional Institution, Dr. Blanchette ordered a soy free/substitution diet which did not include quick chill meals.

The plaintiff returned to Northern Correctional Institution in December 2010.  Dr. Wright discontinued the soy free diet.  Over the next four years, Dr. Wright refused to address the plaintiff's soy issue.  The plaintiff continued to lose weight unless he ate foods purchased at the commissary.  Dr. Wright altered the plaintiff's statements.  For example, if the plaintiff stated that he cannot eat meals with sauce or gravy, Dr. Wright would write down that the plaintiff did not like those meals.

When the plaintiff filed another lawsuit in 2013 challenging denial of a kosher diet, he learned that TVP was used in both the common fare and regular meals. Between 2010 and 2015, the plaintiff had three episodes of diverticulitis that were not addressed by medical staff. Dr. Wright refused to see the plaintiff when his diverticulosis changed to diverticulitis.

In May 2013, Dr. Wright ordered a medical diet for the plaintiff to address dramatic weight loss. It was not a soy-free diet. Dr. Wright also ordered a soy-based protein supplement.

In November 2013, testing at the University of Connecticut Health Center confirmed the plaintiff's soy allergy. The gastroenterologist recommended a colonoscopy, endoscopy, reduction of sauce/gravy meals, and a surgery consult. Dr. Wright followed all of the recommendations except the reduction of meals containing sauce or gravy. The February 2014 colonoscopy/endoscopy showed diverticulosis but no diverticulitis. The plaintiff attributes this result to the fact that he had not eaten any quick chill sauce/gravy meals for the previous year.

On June 11, 2014, a RAST was done to verify soy allergy even though this test cannot detect a non-IgE-mediated allergy. Dr. Wright and Dr. Wu reviewed the test results instead of a specialist. The final report stated that the RAST was inconclusive.

II.  Analysis

The plaintiff asserts a federal claim for deliberate indifference to his soy allergy.  An allergy to soy products has been considered sufficient to state a serious medical need at the initial pleading stage.  See Munson v. Shearing, No. 15-cv-00062-MJR, 2015 WL 350661, at *3 (S.D. Ill. Jan. 27, 2015)(permitting deliberate indifference claim based on refusal to diagnose and treat suspected soy allergy to proceed); Escalante v. Huffman, No. 7:10-cv-00211, 2011 WL 3107751, at *9 (W.D. Va. July 26, 2011) (recognizing that food allergy can give rise to serious medical need if plaintiff shows that he did not receive adequate nourishment), aff'd and adopted, 2011 WL 3584992 (W.D. Va. Aug. 15, 2011).  One court within this circuit held that failure to treat a food allergy did not state a claim for deliberate indifference to a serious medical need.  See Collado v. Sposato, No. 12-CV-2151(SJF)(WDW), 2012 WL 3113837, at *4 (E.D.N.Y. July 24, 2012).  In Collado, however, the

7

plaintiff suffered only stomach pains and alleged no facts suggesting that the defendant was aware of that the plaintiff was not receiving an appropriate diet.  Id.

Here, the plaintiff alleges that his allergy was diagnosed by other Department of Correction doctors and that Dr. Wright was aware of his symptoms and complaints.  He also alleges that he suffered many symptoms including dramatic weight loss.  The court concludes that these allegations are sufficient to state a plausible claim against Dr. Wright for deliberate indifference to a serious medical need.  The plaintiff alleges that Dr. Wu was made aware and failed to intercede.  The court concludes that the plaintiff has stated a plausible claim against Dr. Wu for supervisory liability.

As to defendant Fury, the plaintiff includes no allegations about him.  Thus, the court will not order the complaint served on defendant Fury.  The plaintiff may file an amended complaint provided he can allege facts demonstrating how defendant Fury violated his constitutional rights.

The plaintiff also refers to grievances by number and to medical records filed in another case.  The court will only consider records if they are filed in this case.

ORDERS

In accordance with the foregoing analysis, the court enters the following orders:

(1)  **The Clerk shall** verify the current work address of named defendants Wright and Wu with the Department of Correction Office of Legal Affairs, and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this order.  The Clerk shall report to the court on the status of that waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)  **The Clerk shall** prepare a summons and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the complaint on defendants Wright and Wu in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order

and to file a return of service within thirty (30) days from the date of this order.

(3) **The Clerk shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) **The defendants shall** file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order.  Discovery requests need not be filed with the court.

(6) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or

the response is not timely, the dispositive motion can be granted absent objection.

(8) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

It is so ordered.

Signed this 15th day of March 2016 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge